IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DANIEL B. CLARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:16-cv-00919-KOB-TMP |
| | ) |
| CODY PRICE, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The magistrate judge filed a report on November 13, 2017, recommending the defendants' motion for summary judgment be granted in part and denied in part. (Doc. 38). Specifically, the magistrate judge recommended that the defendants' motion for summary judgment be granted on the plaintiff's Eighth Amendment excessive force claims against them in their official capacities for monetary relief. (*Id.*). The magistrate judge further recommended that the defendants' motion for summary judgment on the plaintiff's Eighth Amendment excessive force claims against them in their individual capacities be denied. (*Id.*). The defendants filed objections to the report and recommendation on November 27, 2017. (Doc. 40).

1

A.  *Scott v. Harris*

The defendants first argue that the magistrate judge did not apply *Scott v. Harris*, 550 U.S. 372 (2007), to the summary judgment facts. (Doc. 40 at 2-12). The defendants contend that the evidence blatantly contradicts the plaintiff's version of events and the court should not credit the plaintiff's version of events under *Scott*. (*Id.*).

In *Scott*, a video recorded a high speed chase between a police officer and a § 1983 plaintiff and contradicted the plaintiff's version of events. *Id.* at 374-75, 378-81. The Supreme Court held that the plaintiff's version of events was "so utterly discredited by the record," it would view the "facts in the light depicted by the videotape." *Id.* at 380-81. The Court explained that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380.

In contrast to *Scott*, the record here does not contain a video of the encounter between Mr. Clark and defendants on April 13, 2016. The Eleventh Circuit has since analyzed the holding in *Scott* in cases that do not involve video evidence. *See Morton v. Kirkwood*, 707 F.3d 1276, 1284-85 (11th Cir. 2013); *Joassin v. Murphy*, 661 Fed. App'x 558, 559-60 (11th Cir. 2016).

Mr. Clark alleges that on April 13, 2016, he was handcuffed behind his back during a medical examination in the Health Care Unit. (Doc. 33 at 19, Clark Aff.). He claims that during the examination, Officer Nathan Johnson accused the plaintiff of looking at him. (*Id*.). Mr. Clark states that he looked away from Officer Nathan Johnson, but Johnson walked into his view and accused the plaintiff of "eyeballing" him. (*Id*.). Mr. Clark responded that no rule prevented the plaintiff from looking at Nathan Johnson. (*Id*.).

Mr. Clark alleges that Sergeant Cody Price placed his right hand on the plaintiff's left shoulder and told him to "stop smarting off at his [o]fficers." (Doc. 33 at 20, Clark Aff.). Thereafter, he claims Sergeant Price "eased his thumb over my windpipe and was pressing them together." (Doc. 33 at 20, Clark Aff.). Mr. Clark alleges he could not move his head or neck and that Price pressed on his windpipe until he started "passing out." (*Id*.). He states that Sergeant Clint Johnson threw him head first onto the floor. (Doc. 33 at 20, Clark Aff.). He contends Sergeant Clint Johnson, Sergeant Price, and Correctional Officer Nathan Johnson began to assault him while he was still handcuffed behind his back. (Doc. 7 at 4; Doc. 33 at 3). Specifically, Mr. Clark alleges Nathan Johnson "came down" on his back and twisted his arm while Clint Johnson kneed him in the back and hit him on his thighs. (Doc. 33 at 20, Clark Aff.). He claims Sergeant Price had his

3

left hand pressed on the right side of the plaintiff's face, pushing the plaintiff's face against the floor. (*Id.*). Mr. Clark alleges Sergeant Price took his right hand and continued to squeeze the plaintiff's windpipe, stating, "'Bitch[,] I will kill you! Bitch[,] this [is] how you choke a mutherfucker [sic]!'" (*Id.*).

Mr. Clark contends that when the officers saw that he was not fighting back, they stopped assaulting him and told him to get into a seated position. (Doc. 33 at 20, Clark Aff.). He argues that he posed no threat to himself, security staff, or medical staff and did not exhibit any aggressive behavior before officers assaulted him. (Doc. 33 at 11, 15-16).

Nurse Peoples conducted a "Post Use of Force" examination of the plaintiff. (Doc. 24-8 at 9-10). She noted that the plaintiff's eyes were red, but that he had no head or other injuries "[at] this time." (*Id*. at 9). Peoples advised the plaintiff that if he had any changes in his medical condition to notify medical staff as soon as possible. (*Id*. at 10).

On April 19, 2016, Mr. Clark submitted a sick call request in which he stated that he sustained a severe concussion three to four weeks prior and that he was experiencing similar symptoms as a result of Sergeant Price, Sergeant Clint Johnson, and Officer Nathan Johnson "slamm[ing]" him on his head on April 13, 2016. (Doc. 24-8 at 11). On April 20, 2016, medical staff examined the plaintiff for

4

complaints of headache, blurred vision, and dizziness and prescribed him pain medication. (Doc. 24-8 at 12-13). Mr. Clark states he was already prescribed medication for dizziness and "there was nothing more [medical staff] could do." (Doc. 33 at 12).

The plaintiff and the defendants have submitted the photographs taken of him shortly after the use of force on April 13, 2016. (Doc. 24-1 at 4; Doc. 34 at 18). Both the plaintiff and the defendants argue that the photographs support their version of events. Mr. Clark contends the photographs show swelling to the left side of his face as a result of the defendants throwing him to the ground and Sergeant Price holding his head down on the floor. (Doc. 34 at 18). The defendants argue the photographs do not show any injury to the plaintiff and contradict his claims. (Doc. 40 at 6). However, the court cannot tell definitively from the black and white photographs whether Mr. Clark's face is swollen, the condition of his neck, or whether he incurred any bruising as a result of the defendants allegedly throwing him down, choking him, kneeing him in the back, and hitting him on his thighs. (Doc. 24-1 at 4; Doc. 34 at 18). Thus, viewing the photographs in a light most favorable to the plaintiff, they do not rule out his claims.

The defendants also note that Mr. Clark was involved in an altercation at Staton Correctional Facility on May 9, 2016, and beaten severely. (Doc. 40 at 9;

Doc. 24-1 at 10; Doc. 24-8 at 15-21). They argue that Mr. Clark made no mention of the injuries he sustained after the April 13, 2016 assault in the medical records compiled after his May 9, 2016 assault. (Doc. 40 at 9-12). However, Mr. Clark's failure to reference an injury he sustained nearly a month before in an unrelated incident at a different facility does not, by itself, discredit his claims in the present action.

Based on the foregoing, this situation is not one where the record contains evidence that so blatantly contradicts the plaintiff's testimony as to render it utterly discredited and to preclude the existence of a genuine dispute of material fact. *See Joassin v. Murphy*, 661 Fed. App'x 558, 559-60 (11th Cir. 2016) (finding prison investigator and prison nurse's declarations and records of the inmate's medical treatment did not blatantly contradict and utterly discredit the plaintiff's testimony under *Scott* where the prison investigator and prison nurse were merely interested witnesses) (citing *Jackson v. West*, 787 F.3d 1345, 1357 n.6 (11th Cir. 2015) ("One cannot 'refute' a witness's statements using another witness's statements at summary judgment; such a swearing contest is one for the jury to resolve.")); *Pearson v. Taylor*, 665 Fed. App'x 858, 865 (11th Cir. 2016) (finding that the medical records refuted the inmate's allegations only as to the severity or existence of his injuries and noting that "our inquiry is not whether [the plaintiff] met a certain arbitrary injury

requirement," but whether force was applied to maintain or restore discipline or maliciously and sadistically to cause harm) (citation omitted). Moreover, Mr. Clark's allegations that the defendants used excessive force against him cannot be discredited simply because he did not have a serious injury. The fact that a prisoner has escaped serious injury does not mean he has not been subjected to unconstitutionally excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, 38-39 (2010).

Drawing all reasonable inferences in the plaintiff's favor, his sworn statements create a genuine issue of material fact as to "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley Albers*, 475 U.S. 312, 320-21 (1986) (citation omitted). The record does not blatantly contradict the plaintiff's version. Therefore, the defendants' objection based on the magistrate judge's failure to discredit the plaintiff's version of the events under *Scott* is **OVERRULED**.

**B.     Officer Rice's Statements**

Next, the defendants argue that the court should not consider the plaintiff's claims regarding Correctional Officer Jeremy Rice's alleged out-of-court statements on April 13, 2016, because they constitute inadmissible hearsay. (Doc. 40 at 12-13). The defendants contend that the hearsay statements do not fit any

7

exception because Officer Rice is not a party and has submitted an affidavit that contradicts the hearsay statements. (*Id*. at 13).

The magistrate judge noted Mr. Clark's claim in his affidavit that, during the assault, Officer Rice stated that the defendants "were going [too] far." (Doc. 38 at 6-7). The magistrate judge further noted the plaintiff's claim in his affidavit that when Lieutenant Copeland interviewed Rice about the alleged assault, Rice stated, "'Damn right [ya'll] did that. It was unnecessary, shouldn't have done it[.] I ain't gone [sic] lie!'" (*Id*. at 9). Officer Rice submitted an affidavit in support of the defendants' Special Report in which he denies the plaintiff's allegations that the defendants used excessive force against him on April 13, 2016. (Doc. 24-5, Rice Aff. at 1-2).

"The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) (footnote omitted) (internal quotation marks omitted). Nevertheless, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form.'" *Id*. at 1323 (internal quotation marks omitted). Although hearsay testimony can be reduced to admissible form if the hearsay declarant testifies directly to the matter at trial, *Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1135

8

(11th Cir. 1996), "if . . . the declarant has given sworn testimony during the course of discovery that contradicts the hearsay statement," the district court may not consider the hearsay statement at the summary judgment phase. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012).

Based on the foregoing, Mr. Clark's affidavit concerning Officer Rice's alleged out of court statements constitutes hearsay and the defendants' objection is **SUSTAINED**. However, the magistrate judge set forth in the summary judgment facts that Officer Rice submitted an affidavit refuting these alleged out of court statements. (Doc. 38 at 9, n.6). Moreover, the magistrate judge does not appear to have relied on any of Rice's alleged out-of-court statements in recommending that the defendants' motion for summary judgment be denied. (*Id*. at 12-19). Indeed, the magistrate judge did not expressly reference any of Rice's alleged out of court statements in his analysis of the plaintiff's Eighth Amendment excessive force claims. (*Id*.). The plaintiff's sworn amended complaint and affidavit, to the extent they set forth his firsthand account of the alleged events, create a genuine dispute of material fact to defeat summary judgment. Thus, disregarding Mr. Clark's claims concerning Rice's alleged out-of-court statements does not alter the magistrate judge's conclusion on this basis.

## C. Excessive Force

The defendants further argue that they did not use excessive force against the plaintiff on April 13, 2016, but rather used only the amount of force necessary in a good faith effort to correct the plaintiff's disruptive behavior and maintain order and discipline. (Doc. 40 at 14-17). They reason that the plaintiff's lack of significant injury supports a finding that the defendants' use of force was *de minimis*. (*Id*.).

Taking the plaintiff's version of events as true, which the court must do at this state, Sergeant Price choked him and Sergeant Clint Johnson threw him on the ground head first where Price continued to choke him and Clint Johnson and Nathan Johnson held him down and struck him. (Doc. 7 at 3-5; Doc. 33 at 19-20, Clark Aff.). Mr. Clark clearly disputes the defendants' account that he was being disruptive and posed a threat to staff. (Doc. 33 at 7, 11-12, 13, 15). Additionally, Mr. Clark has stated both in his sworn amended complaint and affidavit that he was already handcuffed behind his back when officers allegedly assaulted him. (Doc. 7 at 3-4; Doc. 33 at 11, 15-16). Thus, the plaintiff has submitted sufficient evidence that the defendants' use of force was excessive. See *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)(the plaintiff's self-serving can be sufficient to defeat summary judgment).

The defendants argue that the plaintiff did not suffer a serious injury because

10

of the use of force. (Doc. 40 at 16-17). However, the extent of injury presents only one factor in determining whether an inmate was subjected to excessive force. Indeed, in the context of an Eighth Amendment excessive force claim, the Supreme Court has recognized that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38-39 (2010) (explaining that the "core judicial inquiry" for an excessive force claim under the Eighth Amendment is not based on the extent of the plaintiff's injury, but rather on "the nature of the force" used; i.e., "whether [the force] was nontrivial and 'was applied . . . maliciously and sadistically to cause harm'") (citation omitted).

Even if Mr. Clark did not suffer serious injury, his claims that the defendants, without justification, choked him, threw him on the floor head first, and struck him while he was handcuffed behind his back, *if proven*, fall within the category of conduct "'repugnant to the conscience of mankind.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation omitted). In the absence of a good faith need to restore or maintain order and discipline, officers have no license to choke or strike inmates. Even if the defendants' alleged actions did not cause serious injury, choking and striking plainly inflict pain that, under the circumstances presented by the plaintiff's evidence, was entirely unnecessary and malicious.

Moreover, Mr. Clark has submitted a sick call slip in which he complains of dizziness and visual disturbances a few days after the alleged assault. (Doc. 34 at 24). He also submitted pictures taken after the alleged assault that he claims show swelling to his face. (Doc. 24-1 at 4; Doc. 34 at 18).

Based on the foregoing, sufficient evidence in the record creates a genuine issue of fact concerning whether the defendants used excessive force against the plaintiff. The court must accept as true the plaintiff's testimony that force was used against him, the lack of justification for the force, and the extent of force used. The court may not disregard that direct testimony merely because the defendants deny that it happened and no medical evidence shows a significant injury. The court may not assess the credibility of the plaintiff's testimony. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244 (11th Cir. 2013). Therefore, the defendants' objection that the evidence supports a finding that the force used was not excessive is **OVERRULED**.

D.   **Prison Litigation Reform Act**

The defendants assert that the magistrate judge did not properly address their argument that the plaintiff's claims are subject to dismissal under the Prison Litigation Reform Act ("PLRA") because he did not show that he suffered more than *de minimis* injury. (Doc. 40 at 17-21). Title 42 U.S.C. § 1997e(e), which is a

limitation on the recovery an inmate may have, provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. . . ." The Eleventh Circuit has held that "[u]nder the statute and our caselaw, an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury." *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015).

Mr. Clark alleges that he suffered a concussion three or four weeks prior and experienced similar symptoms after the alleged assault on April 13, 2016. (Doc. 24-8 at 11). Nurse Peoples conducted a "Post Use of Force" examination of the plaintiff shortly after the alleged assault on April 13, 2016, and noted that his eyes were red but did not find any injuries to his head or otherwise. (Doc. 24-8 at 9-10). However, Mr. Clark alleges that photographs taken of him shortly after the assault show swelling to his face. (Doc. 24-1 at 4; Doc. 34 at 18). Additionally, he later complained of a headache, blurred vision, and dizziness which, he claims, were a reoccurrence of symptoms associated with a prior concussion. (Doc. 24-8 at 11-12). He contends he was already taking medication for dizziness and, therefore, medical staff only provided him with pain medication. (Doc. 24-8 at 12-13; Doc. 33 at 12).

13

As stated previously, the court cannot discern whether the black and white photographs taken shortly after the use of force on April 13, 2016, depict swelling or bruising to Mr. Clark's face, neck, or extremities, especially because the court has no basis for knowing his appearance prior to the alleged assault. The court cannot say, however, that Mr. Clark did not incur such injuries. While Mr. Clark does not appear to have received any medical care after the staff prescribed him pain medication on April 20, 2016, nothing in the record rules out that Mr. Clark suffered dizziness and visual disturbances suggesting a head injury after the alleged assault. Whether the alleged assault actually happened at all is a question for the jury. Further, the pain associated with the assault itself is more than a *de minimis* injury. Mr. Clark claims that one officer used his thumb to clamp shut his windpipe, while other others crashed his face to the floor. Certainly, the pain associated with these actions would be more than *de minimis*. Although a close call, if the jury finds that the unprovoked assault happened as the plaintiff claims it did, a reasonable jury could also conclude that the plaintiff's injuries rose above the *de minimis* level.

Additionally, a plaintiff claiming violation of his constitutional rights is entitled to nominal damages even if he suffered no compensable injury. *See Brooks v. Warden*, 800 F.3d 1295, 1307-08 (11th Cir. 2015) (holding that nothing in § 1997e(e) prevents a prisoner from recovering nominal damages for a constitutional

14

violation without a showing of physical injury); *Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003) ("Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages."). Indeed, the defendants concede the magistrate judge's point that a nominal damages award is appropriate even without injury following an Eighth Amendment violation. (Doc. 40 at 19). However, the defendants argue that the plaintiff has not specifically requested nominal damages. (*Id*. at 20).

For relief, Mr. Clark requests "$500,000 compensatory damages" and "$2.5 million dollars punitive damages" from the defendants, (doc. 7 at 4), which appears inconsistent with a request for nominal damages. *See Carey v. Piphus*, 435 U.S. 247, 266-67 (1978) (holding if plaintiffs were entitled to nominal damages for the mere violation, the damages should not exceed one dollar); *Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir.1999) ("[N]ominal damages, of which $1 is the norm, are an appropriate means of vindicating rights whose deprivation has not caused actual, provable injury."). However, the Eleventh Circuit has held that even when a *pro se* plaintiff has not requested nominal damages specifically in his complaint, in light of the liberal construction afforded *pro se* pleadings, a district court should consider whether such damages are recoverable before dismissing a complaint. *See*

*Magwood v. Sec'y, Florida Dep't of Corr.*, 652 Fed. App'x 841, 845 (11th Cir. 2016) (citing *Hughes v. Lott*, 350 F.3d 1157, 1162-63 (11th Cir. 2003)). In other words, the failure to specifically request nominal damages as an alternative measure of recovery does not doom Mr. Clark's Complaint.

A genuine dispute of material fact exists as to whether the defendants' use of force against Mr. Clark on April 13, 2016, was applied maliciously and sadistically to cause harm or in a good faith effort to maintain or restore discipline. Because the PLRA does not preclude nominal damages and "are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove [an] actual injury sufficient to entitle him to compensatory damages," Mr. Clark may be entitled to nominal damages for his excessive force claims against the defendants should a jury determine that he suffered no physical injury. *See Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003); *Slicker v. Johnson*, 215 F.3d 1225, 1231-32 (11th Cir. 2000) (finding that even if the plaintiff was unable to demonstrate that he suffered an actual injury, "under controlling case law the district court erred in not allowing Slicker to seek nominal damages"). Therefore, the defendants' objection based on their argument that the plaintiff's claims are subject to dismissal under the PLRA is **OVERRULED**.

Having carefully reviewed and considered *de novo* all the materials in the

court file, including the report and recommendation, and the defendants' objections, the court ADOPTS the magistrate judge's report and ACCEPTS his recommendation. Accordingly, the court **ORDERS** that the defendants' motion for summary judgment on the plaintiff's Eighth Amendment excessive force claims against them in their official capacities for monetary relief is **GRANTED.** The court further **ORDERS** that the defendants' motion for summary judgment on the plaintiff's Eighth Amendment excessive force claims against them in their individual capacities is **DENIED** because genuine issues of material fact exist. Additionally, the court **ORDERS** that the defendants' motion for summary judgment on the plaintiff's Eighth Amendment excessive force claims on the basis of qualified immunity is **DENIED**.

The court **ORDERS** the defendants to file a formal answer to the plaintiff's amended complaint within twenty days of the entry of this Order. This matter is **REFERRED** to the magistrate judge for further proceedings.

**DONE** and **ORDERED** this 4th day of January, 2018.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE